James L. PRESTON and David L. McCarty, Appellants–Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 67A01–0001–CR–14.

Court of Appeals of Indiana.

Sept. 26, 2000.

Jeffrey R. Mitchell, Yarling & Robinson, Indianapolis, Indiana, Attorney for Appellants.

1. The record indicates that a tri-axle dump truck has three axles under the bed and one

Karen M. Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellants-defendants James L. Preston ("Preston") and David L. McCarty ("McCarty") (collectively, "appellants") appeal the trial court's judgments against them for violating maximum highway weight limitations. We affirm.

### Issues

Appellants raise four issues for review, which we consolidate and restate as follows:

I.  whether the trial court's judgments are supported by sufficient evidence;

II.  whether Indiana Code Section 9–20–18–7 was applicable as a defense to the weight limitation action initiated by the State under Indiana Code Section 9–20–4–1; and

III.  if Indiana Code Section 9–20–4–1 was applicable as a defense, whether appellants presented sufficient evidence of their lack of access to or control of the loading of their trucks to avoid liability.

### Facts and Procedural History

On May 26, 1999, appellants were driving asphalt-laden tri-axle[1] dump trucks for Milestone Contractors when state police motor carrier inspectors stopped their vehicles in Putnam County, Indiana. The inspectors weighed both trucks and determined that Preston's load weighed 55,600 pounds and that McCarty's load weighed 54,100 pounds. Both Preston and McCarty received citations for "overweight com-

steering axle.

bination axles" pursuant to Indiana Code Section 9–20–4–1.

On October 19, 1999, the trial court conducted a joint hearing on appellants' citations. During final argument, appellants' counsel attempted to assert Indiana Code Section 9–20–18–7 as a defense, claiming that appellants "had no access to or control of" the loading of their trucks. Noting that this statute mentions criminal liability, whereas appellants' alleged violations were merely infractions, the trial court took its applicability under advisement. On November 3, 1999, the trial court entered judgment against appellants, ordering Preston to pay $460 plus costs and McCarty to pay $248 plus costs. The trial court did not enter findings regarding the applicability of Indiana Code Section 9–20–18–7 in its orders of judgment. However, the corresponding chronological case summary ("CCS") entries for both causes state that the court found "that IC 9–20–18–7 is inapplicable to this case as it speaks to criminal liability only, and the charge herein is an infraction under IC 9–20–4."

### Discussion and Decision

### I. Sufficiency of Evidence of Appellants' Weight Limit Violations

■ "[A]n appellate court may affirm a trial court's judgment[2] on any theory supported by the evidence." *Dowdell v. State,* 720 N.E.2d 1146, 1152 (Ind.1999). When reviewing a challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. *See Pridemore v.*

State, 577 N.E.2d 237, 239 (Ind.Ct.App. 1991). "Rather, we look to the evidence which best supports the judgment and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value supporting the trial court's judgment, it will not be overturned." *Id.* (citations omitted).

■ Traffic infraction proceedings are civil, rather than criminal, in nature, and are to be conducted in accordance with the Indiana Rules of Trial Procedure. *See Pridemore,* 577 N.E.2d at 238; *see also* IND.CODE § 9–20–18–12 (listing penalties for violation of weight limitations); IND. CODE § 34–28–5–1 (outlining prosecution of infractions); *Wirgau v. State,* 443 N.E.2d 327, 329–30 (Ind.Ct.App.1982) (noting shift from criminal to civil procedure for traffic infractions as of September 1, 1981). "[T]he State must prove the commission of the infraction by only a preponderance of the evidence[.]" *Pridemore,* 577 N.E.2d at 238.

■ Appellants contend that the State failed to prove that they violated any subsection of section 9–20–4–1. However, we need not accept their invitation to sift the evidence through each subsection of the statute because they both admitted at the hearing that the load limit for their tri-axle dump trucks is 50,000 pounds.[3] *See Wirgau,* 443 N.E.2d at 332 (recognizing conclusiveness of defendant's admission that his vehicle was overweight: "It is neither a statutory requirement nor a requirement of our civil rules of procedure that a plain-

---

2. We observe that the CCS entries containing the trial court's finding regarding section 9–20–18–7 cannot be considered part of the trial court's judgments. A judgment entered by the trial court and the CCS maintained by the court clerk are complementary yet discrete documents. *See* Ind. Trial Rules 58(A) and 77(B); *see also Whatley v. State,* 685 N.E.2d 48, 50 (Ind.1997) ("Normally when a proper judgment is prepared, the court clerk then makes a verbatim entry of such judgment in the Record of Judgments and Orders ("RJO") and also places a summary notation of the RJO entry in the [CCS].").

3. We note that Preston never specifically stated that he drove a tri-axle dump truck on May 26, 1999. However, given that appellants were both delivering the same cargo for the same employer; that Preston confirmed McCarty's admission of the 50,000–pound load limit; that the trucks' loads weighed substantially the same; and that neither party indicated that the trucks differed in any significant way, it is reasonable to infer that Preston drove a tri-axle dump truck on the day in question.

tiff must establish facts admitted by his adversary."). Because appellants do not challenge the sufficiency of the State's evidence that their loads exceeded this limit, we need not address this issue further.

## II.  Applicability of Indiana Code Section 9–20–18–7

■ Having determined that the State met its burden of proof, we must now determine whether section 9–20–18–7 was applicable as a defense. The statute reads as follows:

**9–20–18–7 Criminal liability; defenses; knowledge of violation; fine; payment; sale of property**

Sec. 7. (a) A court shall determine the extent of liability of the driver, carrier, shipper, or other party shown to be criminally liable.

(b) It is a defense if a party can show that the party:

(1) could not reasonably have known the actual weight of the load involved; or

(2) had no access to or control of the loading of an overweighted load.

(c) If a person who is an owner, a driver, a carrier, or a shipper specifically or directly orders or assigns a particular shipment to be loaded:

(1) the person shall be considered to have had control of the loading within the meaning of this section; and

(2) a showing of knowledge of the overweighted load affixes criminal liability to the person.

(d) The person who has loaded a shipment has control of the loading within the meaning of this section and a showing of knowledge of the overweighted load affixes criminal liability to the person if the person is self-employed. If the person loading a shipment is not self-employed, then criminal liability affixes to the person's employer jointly and severally with the driver of an overweight vehicle.

(e) If a court determines that the owner of a vehicle or combination of vehicles involved in a case is jointly or severally liable, the owner shall be given ninety (90) days to pay the liability assessed by the court. During the ninety (90) days the court may continue the impounding of the equipment until all fines and costs are paid. If the fines and costs are not paid within the ninety (90) days after the court determination, the court may order the property sold to pay the fines and costs.

(f) The court shall determine the liabilities, rights, and remedies of all of the parties involved.

Since 1981, traffic infractions have been civil, rather than criminal, in nature. *See Wirgau*, 443 N.E.2d at 329–30. Section 9–20–18–7 was last amended in 1991, and the defense regarding "access to or control of the loading" first appeared in 1971. *See* 1991 Ind. Acts 2 § 8; 1971 Ind. Acts 134 § 1. Appellants contend that notwithstanding the statute's mention of criminal liability, it must be applicable as a defense to a weight limit violation charge under the current civil procedural guidelines. We agree.

■ "When interpreting a statute, a court should strive to achieve the intent of the legislature." *Baker v. State*, 483 N.E.2d 772, 774 (Ind.Ct.App.1985), *trans. denied.* Where, as here, a statute has not been previously construed, the express language of the statute and the rules of statutory construction control the interpretation. *See Becker v. Four Points Inv. Corp.*, 708 N.E.2d 29, 31 (Ind.Ct.App. 1999), *trans. denied.*

All statutory language is deemed to have been used intentionally. Words or clauses in statutes are to be treated as surplusage only in the absence of any other possible course.

Also, where a statute is subject to judicial interpretation, we will endeavor to give it a practical application, to construe it so as to prevent absurdity, hard-

ship, or injustice, and to favor public convenience.

*Baker*, 483 N.E.2d at 774 (citations omitted). "There is a strong presumption that the legislature did not enact a useless provision. We also presume that in enacting a particular piece of legislation, the legislature is aware of existing statutes covering the same subject." *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct. App.1993) (citations omitted). Since the legislature clearly intended that criminal liability no longer be imposed for transporting an overweight load over Indiana highways, *see* IND.CODE § 9–20–18–12,[4] we conclude that the only practical interpretation of section 9–20–18–7 is to consider as mere surplusage any mention of criminal liability within the statute.[5] Thus, section 9–20–18–7 was applicable as a defense to the State's charges of appellants' weight limit violations under section 9–20–4–1.

### III. Sufficiency of Evidence of Appellants' Access to or Control of Loads

Finally, appellants contend that the trial court "simply ignored" the "uncontroverted evidence" that they had no access to or control of the loading of their overweighted loads. *See* IND.CODE § 9–20–18–7(b). McCarty testified that the asphalt was dumped into his truck from a "silo" and that he had no ability to "control the load," with which Preston agreed. However, McCarty also stated, "Well, I loaded the truck two thousand pounds under the State's legal gross and when I left to the plant, to the best of my knowledge, it was placed proportioned appropriately." McCarty also acknowledged that he was responsible for ensuring that he had the "right load" on the truck and that he could have driven his truck onto the scales at the asphalt plant, detached the steering axle,

and weighed only the tri-axle portion of the truck. Even though appellants did not control the mechanical apparatus that loaded their trucks, they did have access to the loading and could have controlled the weight of their loads. Consequently, appellants failed to satisfy their evidentiary burden under section 9–20–18–7.

Affirmed.

DARDEN, J., and MATTINGLY, J. concur.

---

4. Section 9–20–18–12 provides in relevant part that a violation of a weight limitation under section 9–20–4 is either a Class A, B, or C infraction, depending on the extent of the violation.

5. We respectfully direct the General Assembly's attention to the wording of section 9–20–18–7, given its inconsistency with Indiana's longstanding legislative intent to impose only civil liability for traffic infractions.